IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO INNOVATION LAW LAB, | No. 1:23-CV-01324 |
| Movant, | |
| STATE OF ARIZONA, *et al.*, | Judge Thomas W. Thrash, Jr. |
| Plaintiffs, | Magistrate Judge J. Elizabeth McBath |
| v. | Underlying Litigation: |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | No. 6:22-CV-1130-DCJ-CBW United States District Court Western District of Louisiana |
| Defendants. | |

**THE STATE OF LOUISIANA'S OPPOSITION TO
INNOVATION LAW LAB'S MOTION TO QUASH**

## TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................ii

TABLE OF AUTHORITIES ...............................................................iv

INTRODUCTION ................................................................................ 1

BACKGROUND .................................................................................. 2

    I.    THE UNDERLYING LITIGATION ...................................................... 2

        A.    Nineteen States Challenge the Asylum IFR on Constitutional and Statutory Grounds................................ 2

        B.    The District Court Orders Jurisdictional Discovery on the States' Standing—at the Federal Defendants' Request. ..... 2

        C.    The States Seek Standing Discovery from the Government. ....................................................................... 3

        D.    The States Seek Standing Discovery from Private Parties. 4

    II.    THE SUBPOENA LITIGATION ........................................................ 4

        A.    The State Serves a Modest, Five-Request Document-Only Subpoena on Law Lab, Seeking Court-Ordered Jurisdictional Discovery. ...................................................... 4

        B.    The State Emphasizes Its Willingness and Desire to Minimize Any Burden on Law Lab...................................... 6

        C.    Law Lab Moves to Quash—Without Trying to Confer as to the Scope or Burden of Any Particular Request. ................. 6

ARGUMENT ....................................................................................... 7

    I.    LAW LAB FAILED TO SHOW THAT THE MODEST, FIVE-REQUEST DOCUMENT SUBPOENA REQUIRES DISCLOSURE OF PRIVILEGED OR OTHER PROTECTED MATTER............................................................. 7

        A.    Law Lab's Blanket Claims of Privilege and Work-Product Protection Are Inadequate as a Matter of Law................... 7

        B.    Law Lab Failed to Show that the Attorney-Client Privilege Attaches to Any of the Documents Sought........................... 9

ii

C.    Law Lab Failed to Show that Work-Product Protection Attaches to Any of the Documents Sought. ........................ 13

D.    Law Lab Waived Any Work-Product Protection and Privilege By Failing to Timely Produce a Log. ................................. 15

E.    Law Lab Failed to Show that State Rules of Professional Responsibility Preclude Compliance with the Subpoena. . 16

F.    Law Lab Failed to Show that Federal Confidentiality Regulations Preclude Compliance with the Subpoena. ..... 17

II.    LAW LAB FAILED TO SHOW THAT A SINGLE MODEST, FIVE-REQUEST DOCUMENT-ONLY SUBPOENA UNDULY BURDENS IT ..................... 18

A.    The Requests are Relevant to Standing. ............................ 18

B.    The Requests Are Tailored to the States' Standing. ........... 21

C.    The Requested Documents are Important. ........................ 22

D.    Compliance Will Not Be Unduly Burdensome. .................. 23

III.    THE COURT SHOULD MODIFY THE SCOPE OF THE SUBPOENA IF THE COURT FINDS THE SUBPOENA OBJECTIONABLE IN ANY RESPECT. 24

CONCLUSION ............................................. 24

LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE ............................ 25

CERTIFICATE OF SERVICE ......................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Cazorla v. Koch Foods of Miss., L.L.C.*,
  838 F.3d 540 (5th Cir. 2016) ............................................................ 4

*Cobb Elec. Membership Corp. v. Zurich Am Ins. Co.*, No.
  1:09-CV-0675-CAP-WEJ, 2010 WL 11500063 (N.D. Ga. Mar. 29, 2010) ...... 8

*Department of Commerce v. New York*,
  139 S. Ct. 2551 (2017)...................................................................... 20

*Foster v. United States*, No.
  C86-369A, 1986 WL 15615 (N.D. Ga. Sept. 24, 1986) .................................. 8

*Hancock v. Hobbs*,
  967 F.2d 462 (11th Cir. 1992) ........................................................... 9

*Hunte v. Schneider Nat. Carriers, Inc.*,
  No. 1:13-CV-02069-WSD, 2014 WL 3955723 (N.D. Ga. Aug. 13, 2014) ...... 14

*In re Chevron Corp.*,
  749 F. Supp. 2d 170 (S.D.N.Y.) ....................................................... 15

*In re Egidi*,
  571 F.3d 1156 (11th Cir. 2009) ............................................... 10, 12

*In re Grand Jury Matter No. 91-01386*,
  969 F.2d 995 (11th Cir. 1992) ................................................. 12, 13

*In re Grand Jury Proceedings (David R. Damore)*,
  689 F.2d 1351 (11th Cir. 1982) ....................................................... 12

*In re Grand Jury Subpoena Duces Tecum*,
  112 F.3d 910 (8th Cir. 1997) ........................................................... 16

*In re Grand Jury Subpoena*,
  274 F.3d 564 (1st Cir. 2001) ........................................................... 16

iv

*In re Subpoena Issued to OneSource Orthopedics, Inc.*,
    No. 1:10-CV-01782-JEC-GGB, 2010 WL 11508011 (N.D. Ga. Aug. 3, 2010)
    ..................................................................................................... 15, 18

*Infinite Energy, Inc. v. Thai Heng Chang*,
    No. 1:08-CV-2945-CAP-SSC, 2009 WL 10671446 (N.D. Ga. Feb. 6, 2009) ... 8

*Johnson v. Gross*,
    611 F. App'x 544 (11th Cir. 2015) ....................................................... 8, 13, 16

*La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*,
    No. CV 22-2398, 2023 WL 156876 (E.D. La. Jan. 11, 2023)........................ 24

*Lago Agrio Plaintiffs v. Chevron Corp.*,
    409 F. App'x 393 (2d Cir. 2010).................................................................... 15

*Lowery v. AmGuard Ins. Co.*,
    No. 1:20-CV-05148-TWT, 2022 WL 4596690 (N.D. Ga. May 2, 2022) ......... 18

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)...................................................................................... 22

*McGovern v. Moore*,
    No. 5:13-CO-1353, 2013 WL 5781315 (W.D. La. Oct. 25, 2013).................. 18

*Meade v. General Motors, LLC*,
    250 F. Supp. 3d 1387 (N.D. Ga. 2017) ...................................................... 9, 10

*Presley v. United States*,
    895 F.3d 1284 (11th Cir. 2018) .................................................................... 11

*S. Pilot Ins. Co. v. CECS, Inc.*,
    15 F. Supp. 3d 1284 (N.D. Ga. 2013) ...................................................... 10, 12

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) ........................................................................ 13

*United States v. Finley*,
    434 F.2d 596 (5th Cir. 1970) ........................................................................ 17

*United States v. Leventhal*,
961 F.2d 936 (11th Cir. 1992) ......................................................... 11

*United States v. Moore, Ingram, Johnson & Steele, LLP*,
No. 1:20-CV-02413-LMM, 2020 WL 7766376 (N.D. Ga. Dec. 7, 2020), *aff'd*,
No. 21-10341, 2022 WL 3134374 (11th Cir. Aug. 5, 2022) .......................... 13

*United States v. Rivera*,
837 F. Supp. 565 (S.D.N.Y. 1993) ................................................... 13

*United States v. Schaltenbrand*,
930 F.2d 1554 (11th Cir. 1991) ......................................................... 9

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
No. 1-15-CV-134 RP, 2016 WL 270486 (W.D. Tex. Jan. 21, 2016) ............. 23

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ......................................................... 24

**Statutes**

5 U.S.C. § 552a(b) ........................................................................ 17

Oregon Revised Statute § 40.225 ................................................... 17

**Other Authorities**

1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 5.1 (Dec. 2022)...... 11

9A FED. PRAC. & PROC. CIV. § 2459 (3d ed.) ..................................... 24

MOD. RULES PROF. COND. § 1.6, cmt. ........................................ 16, 18

R. REGUL. FL. BAR 4-16, Comment (Dec. 2, 2022) ............................. 17

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 63(a)................. 16

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS) POLICY
MANUAL, Vol. 1, Ch. 7, § F .......................................................... 17

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES PRACTICE MANUAL,
Ch. 2, § 2.10.............................................................................. 17

vi

## Rules

Fed. R. Civ. P. 4(h)(1)(B) ........................................................... 5

Fed. R. Civ. P. 7(D)(3)(b) ........................................................... 5

Fed. R. Civ. P. 26(b)(3)(A) ........................................................ 14

Fed. R. Civ. P. 45(d)(2)(A) .......................................................... 8

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................... 7

Fed. R. Civ. P. 45(d)(3)(A)(iv) .................................................. 18

Louisiana Rule of Professional Conduct § 1.6(b)(6) ....................... 17

Oregon Rule of Professional Conduct § 1.6(b)(5) ........................... 17

## Regulations

87 Fed. Reg. 18,163 (Mar. 29, 2022) .......................................passim

*Circumvention of Lawful Pathways*,
    88 Fed. Reg 11,704 (Feb. 23, 2023) ........................................ 19

# INTRODUCTION

Innovation Law Lab moves to quash a five-request document subpoena the State of Louisiana issued to it so that Louisiana could obtain court-ordered jurisdictional discovery the federal defendants insist on but refuse to provide.

There are a few problems with Law Lab's motion. It follows no attempt by Law Lab's six lawyers to confer with Louisiana's as to the scope or perceived burden of any request. It cites no authority that actually supports the extension of privilege and work-product protection that accepting its arguments would require. And it identifies no document with the specificity needed for Louisiana to actually evaluate any privilege or work-product claim.

But that is just the start. The motion mangles the undue-burden and relevance analyses. It pretends Louisiana's requests relate to the merits of Louisiana's claims rather than court-ordered standing discovery. It relies on state ethics rules that hornbook law shows to be irrelevant. And it rests on federal confidentiality regulations that facially do not apply to private parties.

The burden was Lab Lab's to prove privilege and work-product protection on a document-specific basis. It did not. The burden was likewise Law Lab's to show that the inconvenience of responding to five document requests outweighed Louisiana's interest in court-ordered discovery that would prove its standing. It did not do that either. Its motion should be denied *in toto*.

# BACKGROUND

## I.   THE UNDERLYING LITIGATION

### A.   Nineteen States Challenge the Asylum IFR on Constitutional and Statutory Grounds.

The underlying litigation is a 19-State challenge to an interim final rule published by the Department of Homeland Security and the Department of Justice. 87 Fed. Reg. 18,163 (Mar. 29, 2022) (Asylum IFR). Plaintiff States allege the Asylum IFR unlawfully "empowers asylum officers to conduct final adjudication of asylum claims arising from the border." Ex. A to St. John Decl. at ¶ 2. The Asylum IFR also "makes it substantially easier for unauthorized economic migrants to enter the United States and obtain asylum through false claims." *Id.* It "harm[s] . . . the Plaintiff States because migrants who are improperly granted asylum will settle in the Plaintiff States," causing sovereign, quasi-sovereign, and fiscal harms. *Id.* at ¶ 3.

### B.   The District Court Orders Jurisdictional Discovery on the States' Standing—at the Federal Defendants' Request.

The federal defendants challenged the States' standing and asked for jurisdictional discovery. Ex B to St. John Decl. at 3–8. The States opposed pre-Rule 12(b)(1) jurisdictional discovery because Rule 11 would require the federal defendants to conduct a reasonable investigation of their own data before moving to dismiss, and the States believed that the federal defendants' reasonable investigation of their own data would make a standing-based Rule

12(b)(1) motion beyond the bounds of Rule 11. *See id.* at 2.

But the federal defendants got the pre-answer jurisdictional discovery they asked for. *First*, the district court directed discovery on "the likely effect the [Asylum IFR] will have on the number of immigrants granted asylum and/or otherwise residing in Plaintiff [S]tates." Ex. C to St. John Decl. at 1. *And second*, the district court directed discovery on "the cost or other measurable effect these additional persons (which the Plaintiff States contend will have been illegally granted asylum) will have on Plaintiff [S]tates." *Id.*

To make the court-ordered jurisdictional discovery more manageable, the parties agreed to take representative discovery from Louisiana and Florida. The Plaintiff States told the district court "they intend to establish Article III standing by showing the effect of the Aslyum IFR on certain discrete programs in the state of Louisiana and Florida, in addition to asserting standing as a matter of law." Ex D to St. John Decl. at 1. And the Plaintiff States advised the district court that they would (1) seek the identities of asylum applicants and asylees, and then (2) look to State agencies to ascertain the expenditures attributable to those individuals. St. John Decl. at ¶ 2.

## C.  The States Seek Standing Discovery from the Government.

Consistent with both the district court's directive and the Plaintiff States' representation to the district court, the Plaintiff States sought from the federal defendants information about asylum applicants residing in Louisiana

or in Florida so that the States could establish: (1) that asylum applicants and asylees predictably reside in those States; and (2) "the cost or other measurable effect" of the Asylum IFR. St John Decl. at ¶ 3. As Plaintiff States expected, however, the federal defendants took an overbroad view of their own regulations and refused to provide that information. *Id.* at ¶ 4.

### D.   The States Seek Standing Discovery from Private Parties.

Anticipating the federal defendants' refusal to provide discovery, the States sought modest jurisdictional discovery from private parties, like Law Lab, that have publicly stated that they help individuals seek asylum in Louisiana, Florida, or nationwide. The States did so cognizant of Fifth Circuit law holding that the confidentiality regulations on which the federal defendants relied do not apply to private parties like Law Lab. *Cf. Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 552 (5th Cir. 2016) (explaining that such regulations "clearly do not preclude discovery from" private parties).

## II.   THE SUBPOENA LITIGATION

### A.   The State Serves a Modest, Five-Request Document-Only Subpoena on Law Lab, Seeking Court-Ordered Jurisdictional Discovery.

The federal defendants' challenge to the States' standing, on the one hand, and refusal to provide their own asylum-related information relevant to the States' standing, on the other hand, left the States with no choice. So the States served a modest, five-request document subpoena on Law Lab.

4

The requests are targeted to obtain information bearing on the court-ordered pre-answer jurisdictional discovery that the federal defendants requested but now refuse to provide—i.e., information about asylum applicants residing in Louisiana or Florida, and about the effect of the Asylum IFR on asylum applications and asylum grant rates. Ex. E to St. John Decl. at 16–17.

Louisiana tried to serve that subpoena on Law Lab's president on February 24 at his home in Portland, but was rebuffed. St. John Decl. at ¶ 5. Later that same day, Louisiana emailed a copy of the subpoena to Law Lab's registered agent and its executive director and asked that Law Lab waive formal service. *Id.*; Ex. F to St. John Decl. Louisiana then sought to serve Law Lab at its registered address on February 27, but Law Lab's registered agent failed to present herself, and the office manager to whom the process server spoke would not even say if Law Lab's registered agent had a set schedule. *Id.* at ¶ 6. The office manager confirmed, however, that (1) the location was an address for Law Lab, and (2) the office manager could receive service. *Id.*

So Law Lab was deemed served that same day. *See* Fed. R. Civ. P. 4(h)(1)(B); Or. R. Civ. P. 7(D)(3)(b). As a courtesy, Louisiana sent confirmatory emails the following day to Law Lab's registered agent and its executive director, and again attached a copy of the subpoena. St. John Decl. at ¶ 6. One of Law Lab's six lawyers later "agree[d] in this case that we have accepted service as of February 27th on the understanding that the date for compliance

5

will be March 17." Ex. G to St. John Decl. at 2. Although Law Lab now proffers an inaccurate account of service, ECF No. 1-1 at 6, Law Lab does not dispute that it was served and had adequate time to comply with the subpoena. *Id.* at 6–7.

### B.   The State Emphasizes Its Willingness and Desire to Minimize Any Burden on Law Lab.

Before and after service, Louisiana made every effort to minimize any burden. Ex G to St. John Decl. After Law Lab's executive director indicated that he had actual notice of the subpoena, and directed Louisiana to his counsel, Louisiana explained it was "happy to discuss the timing of [Law Lab's] response and [to] work with [Law Lab] to minimize and burden." *Id.* at 3.

A few days later, Louisiana reiterated that it sought "to avoid any needless dispute before a federal district court." *Id.* at 2. Louisiana then extended the subpoena response deadline as a courtesy to Law Lab, and agreed to accept production electronically. *Id.* Louisiana again expressed a willingness to work with Law Lab to minimize any burden, and a desire "to avoid troubling a federal court with procedural disputes that can be resolved informally." *Id.*

### C.   Law Lab Moves to Quash—Without Trying to Confer as to the Scope or Burden of Any Particular Request.

On the night before the compliance deadline, Law Lab moved to quash. ECF No. 1. It did so without even trying to confer as to the scope of any request or the burden of responding to any request. St. John Decl. at ¶ 7. Had Law Lab

even tried to do so, this entire litigation might have been avoided. *Id.* at ¶ 8.

## ARGUMENT

I.  **LAW LAB FAILED TO SHOW THAT THE MODEST, FIVE-REQUEST DOCUMENT SUBPOENA REQUIRES DISCLOSURE OF PRIVILEGED OR OTHER PROTECTED MATTER.**

Law Lab failed to show that any of the subpoena's requests requires Law Lab to disclose any privileged or other protected matter. Rule 45(d)(3)(A)(iii) requires the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

Law Lab's motion fails Rule 45(d)(3)(A)(iii)'s test for at least five reasons. *First*, Law Lab's blanket claims of attorney-client privilege and work-product protection are inadequate as a matter of law. *Second*, Law Lab failed to show that any privilege of any sort attaches to any requested document or any identifiable set of documents. *Third*, Law Lab failed to show that any requested document is entitled to any work-product protection of any sort. *Fourth*, Law Lab waived its privilege and work-product protection claims by failing to timely produce a privilege log. *Finally*, Law Lab failed to show that any State's ethics rules prohibit the disclosure of any requested document.

### A.  **Law Lab's Blanket Claims of Privilege and Work-Product Protection Are Inadequate as a Matter of Law.**

Law Lab's blanket claims of attorney-client privilege and work-product protection are *per se* inadequate. ECF No. 1-1 at 9–15. As for privilege, Law Lab asserts that two of the subpoena's five document requests "collectively

7

implicate the attorney-client privilege" and that the requests "encompass documents protected by the attorney-client privilege." *Id.* at 9–10. As for work product, Law Lab simply concludes that one document request "would require disclosure" of opinion work product. *Id.* at 15.

Those conclusory claims are not tied to any specific document—or even an identifiable group of documents. They contain nowhere near enough specificity to allow the State of Louisiana to meaningfully evaluate any of them. And that is why this Court forbids such blanket assertions. "Blanket assertions of privilege, not specifically asserted with respect to particular documents, 'disable the court and the adversary party from testing the merits of the claim of privilege.'" *Cobb Elec. Membership Corp. v. Zurich Am Ins. Co.*, No. 1:09-CV-0675-CAP-WEJ, 2010 WL 11500063, at *6 (N.D. Ga. Mar. 29, 2010) (quoting *Foster v. United States*, No. C86-369A, 1986 WL 15615, at *2 (N.D. Ga. Sept. 24, 1986)). The Eleventh Circuit takes the same view. *See, e.g.*, *Johnson*, 611 F. App'x at 547 ("Blanket assertions of privilege before a district court are usually unacceptable. Instead, [an attorney] must present himself with his records for questioning, and *as to each record* elect to raise or not raise the defense." (quotation omitted)) (emphasis added).

Law Lab's claims must comply with Rule 45(d)(2)(A). *See Infinite Energy, Inc. v. Thai Heng Chang*, No. 1:08-CV-2945-CAP-SSC, 2009 WL 10671446, at *3 (N.D. Ga. Feb. 6, 2009). But they don't. To comply with Rule 45(d)(2)(A),

Law Lab must provide: "(1) a brief description or summary of the document; (2) the date it was prepared; (3) the name(s) and position(s) of the person(s) who prepared the document; (4) the person(s) to whom the document was directed or by whom it was received, or for whom it was prepared, and their position(s); (5) the purpose for preparing the document; [and] (6) the reasons the document purportedly satisfies the attorney-client privilege." *Id.* Law Lab provided none of that information.

### B.    Law Lab Failed to Show that the Attorney-Client Privilege Attaches to Any of the Documents Sought.

Law Lab's privilege argument fails for the independent reason that Law Lab failed to meet its burden of showing that the attorney-client privilege attaches to any of the documents sought. *See* ECF No. 1-1 at 9–16.

Federal privilege law governs Law Lab's assertions of privilege in this federal-question case. *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) (per curiam). As "[t]he party invoking the attorney-client privilege," Law Lab "bears the burden of proving that (1) an attorney-client relationship existed, (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice." *Meade v. General Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017) (citing *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)). Of course, "[n]either the existence of an attorney-client relationship nor the mere exchange of

information with an attorney make out a presumptive claim." *Id.* (quotation omitted). And "[i]t is generally recognized that the communication of factual information is not protected by the attorney client privilege." *Id.* at 1392.

Law Lab has not met *any* part of its three-part burden of establishing the privilege as to *any* document or *any* set of documents. And it is too late for Law Lab to try to do so on reply; it has forfeited any argument that these criteria are met. *Cf. In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009); *S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1290 (N.D. Ga. 2013).

The only arguments Law Lab has made (and so preserved) rest on fundamental misunderstandings of the privilege. *First*, Law Lab's "use of a case management system" says nothing about whether particular (unidentified) responsive documents in that "system" are privileged under this Court's three-part test. *See* ECF No. 1-1 at 9. For discrete information in that "system" to be protected, Law Lab would have to show that the particular information (1) constitutes a confidential communication (2) shared in the context of an existing attorney-client relationship (3) for the purpose of securing legal advice. *See Meade*, 250 F. Supp. 3d at 391. But Law Lab has not even tried to make that showing in its opening brief. And by now it is too late.

*Second*, information that merely "relates to current clients, former clients, and other individuals seeking legal services" is not automatically subject to any privilege. ECF No. 1-1 at 10. Such "factual information" is "not

protected by the attorney client privilege." *Meade*, 250 F. Supp. 3d at 391. Nor does any privilege automatically attach to information "current clients, former clients, and other individuals seeking legal services" may have shared with Law Lab. ECF No. 1-1 at 10; *see Meade*, 250 F. Supp. 3d at 391.

*Third*, Law Lab cites zero authority to support its assertion that "documents are privileged because the responsive documents in Law Lab's possession were collected within the context of the attorney-client relationship." ECF No. 1-1 at 10. That's because no such authority exists. For it is hornbook law that facts collected in the course of an attorney-client relationship are not (without more) privileged. *See* 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 5.1 (Dec. 2022) ("[A] client is not shielded against the compelled disclosure of information simply because that information has been communicated to an attorney.").

*Fourth*, Law Lab complains about two requests—it does not even mention the other three—that require it to identify asylum seekers in Louisiana and Florida. ECF No. 1-1 at 10. Unburdened by citation, Law Lab simply concludes that those identities are privileged. *See id.* But they are not.

The Eleventh Circuit has "held on numerous occasions" that a client's identity is "not normally within the attorney-client privilege." *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) (per curiam) (quotation omitted); *accord, e.g.*, *Presley v. United States*, 895 F.3d 1284, 1294 (11th Cir. 2018)

("[T]he identity of a client or matters involving the receipt of fees from a client are not normally within the [attorney-client] privilege." (quotation omitted)); *Johnson v. Treasury Dep't*, 917 F. Supp. 813, 820–21 (N.D. Ga. 1995) ("[T]his circuit recognizes no attorney-client privilege to conceal a client's identity.")

True, the Eleventh Circuit recognizes a "narrow exception" to the general rule that client identity is not privileged—called the "last-link doctrine." *See In re Grand Jury Proceedings (David R. Damore)*, 689 F.2d 1351, 1352 (11th Cir. 1982) (per curiam). But Law Lab has not even cited that narrow exception; nor has it even tried to show that any document or set of documents satisfies it. *See* ECF No. 1-1 at 9–10. And it has forfeited any attempt to do so at this point. *See Egidi*, 571 F.3d at 1163; S. *Pilot Ins. Co.*, 15 F. Supp. 3d at 1290.

Forfeiture aside, the last-link doctrine does not apply here. That "narrow" doctrine "applies only when it is shown that, due to extraordinary circumstances, disclosure of the client's identity" would reveal "information which is tantamount to a confidential professional communication." *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 998 (11th Cir. 1992). "Merely because the matter which will be disclosed may incriminate the client does not make the matter privileged." *Id.* And this "narrow" exception does not apply where, as here, "all that is at stake is information . . . clients [m]ay prefer to keep private." *United States v. Moore, Ingram, Johnson & Steele, LLP*, No. 1:20-CV-02413-LMM, 2020 WL 7766376, at *5–6 (N.D. Ga. Dec. 7, 2020), *aff'd*,

12

No. 21-10341, 2022 WL 3134374 (11th Cir. Aug. 5, 2022).

The identity of Law Lab's asylum-applicant clients is not tantamount to a "confidential professional communication." *In re Grand Jury Matter No. 91-01386*, 969 F.2d at 998. The most obvious reason is that an applicant's identity is not even confidential: that information is by definition shared with the federal government. And "[a]ny information given to any attorney with the expectation that it would be turned over to a third party would not be protected by the privilege." *United States v. Rivera*, 837 F. Supp. 565, 569 (S.D.N.Y. 1993). That is true in the immigration context as in all others. *See, e.g.*, *id.* (concluding that client files of amnesty applicants were not protected by the attorney-client privilege because the clients supplied their attorney the files with the intention that the information in them be revealed to the INS).

## C.    Law Lab Failed to Show that Work-Product Protection Attaches to Any of the Documents Sought.

Law Lab likewise failed to meet its burden of showing that work-product protection attaches to any identifiable document or group of documents. "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). And "[t]he party invoking the work-product privilege bears the burden of establishing that the privilege applies." *Johnson*, 611 F. App'x at 547. Work product can include some documents "prepared in anticipation of litigation or

for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "For the work-product doctrine to apply," however, "a party must show that the documents were prepared for litigation purposes and not merely in the ordinary course of business." *Hunte v. Schneider Nat. Carriers, Inc.*, No. 1:13-CV-02069-WSD, 2014 WL 3955723, at *1 (N.D. Ga. Aug. 13, 2014).

Law Lab has not shown that any of the materials sought are protected work product—much less *opinion* work product. It is tough to tell given the blanket nature of Law Lab's work-product claims, but it appears that the materials Law Lab complains about were created in the course of Law Lab's usual business—not in connection with any anticipated or pending litigation.

To start, Law Lab's work-product argument is limited to two of the subpoena's five requests—requests 1 and 5. ECF No. 1-1 at 15. As for request 1, Law Lab provides zero explanation or analysis supporting its work-product claim. *Id.* And for good reason. Request 1 asks merely for documents identifying asylum seekers known to Law Lab who reside in Louisiana or Florida. *See* Ex. E to St. John Decl. at 16–17. No authority supports cloaking that purely factual information in work-product protection, and it is now too late for Law Lab to try to come up with some. As for request 5, Law Lab complains that the request would require it to disclose its "mental impressions, conclusions, opinions, or legal theories concerning the [Asylum IFR] and specifically how this rule may impact current and potential clients and

14

potential legal advice that Law Lab offers." ECF No. 1-1 at 15. Not so.

Nothing in request 5 requires Law Lab to disclose any "impressions, conclusions, opinions, or legal theories" in connection with pending litigation tied to the Asylum IFR. *See* Ex. E to St. John Decl. at 16–17.  And if Law Lab misinterpreted the request to require disclosure of some truly work-product-protected information, the proper response is to produce the responsive documents that are not truly work-product-protected—not to withhold responsive, non-work-protected documents and then move to quash without even trying to confer about the scope of the request.

### D.   Law Lab Waived Any Work-Product Protection and Privilege By Failing to Timely Produce a Log.

Law Lab's privilege and work-product claims fail on the merits. They are inadequate factually and legally. But they are also waived. That's because Law Lab did not even bother to timely produce a privilege log.

It is "well established" that "a privilege log must be provided" if the subpoena recipient claims "privileged information may be implicated by a subpoena." *In re Subpoena Issued to OneSource Orthopedics, Inc.*, No. 1:10-CV-01782-JEC-GGB, 2010 WL 11508011, at *3 (N.D. Ga. Aug. 3, 2010). The log is due when the party moves to quash. *In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (per curiam). "'A party that fails to submit a privilege

log is deemed to waive the underlying privilege claim.'" *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (per curiam) (quoting *In re Grand Jury Subpoena*, 274 F.3d 564, 576 (1st Cir. 2001)). The log-or-waive rule also applies to work-product protection. *In re Grand Jury Subpoena*, 274 F.3d at 576.

Law Lab failed to submit a log. It did not submit one before it moved to quash. It did not submit one with its motion. And it has not submitted one since it moved to quash. So Law Lab has waived its underlying claims of privilege and work-product protection. *See Johnson*, 611 F. App'x at 547.

## E.   Law Lab Failed to Show that State Rules of Professional Responsibility Preclude Compliance with the Subpoena.

Law Lab's resort to lawyer-client confidentiality rules is meritless. *See* ECF No. 1-1 at 10–11. State lawyer-confidentiality rules do not expand the scope of the federal attorney-client privilege. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 n.14 (8th Cir. 1997). And if they did, modern discovery would not exist—everything a lawyer produces in discovery qualifies as information relating to the representation of her client. *See, e.g.*, MOD. RULES PROF. COND. § 1.6, cmt. ("The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law."); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 63(a) (explaining that "steps by the lawyer to assert a privilege would not be appropriate" "in pretrial discovery"). Law Lab's "broad

16

assertion[s]" that state ethics rules bar disclosure of client identities are "improper." *Johnson v. Treasury Dep't*, 917 F. Supp. 813, 821 (N.D. Ga. 1995) (citing *United States v. Finley*, 434 F.2d 596, 597 (5th Cir. 1970)).[1]

### F.   Law Lab Failed to Show that Federal Confidentiality Regulations Preclude Compliance with the Subpoena.

Law Lab last invokes federal confidentiality guidance that does not even apply to it. *See* ECF No. 12–13 (first citing United States Citizenship and Immigration Services (USCIS) Policy Manual, Vol. 1, Ch. 7, § F and then citing USCIS Practice Manual, Ch. 2, § 2.10). These invocations are meritless.

As for the USCIS Policy Manual, the guidance provided—by its plain text—applies only to USCIS. *See* Policy Manual, Vol. 1, CH. 7, § F. That guidance interprets the Privacy Act, 5 U.S.C. § 552a(b), which applies only to federal agencies. *See* 5 U.S.C. § 552a(b) ("No agency shall disclose . . . .").

The USCIS Practice Manual is equally unhelpful. The cited portion merely requires "attorneys and accredited representatives" to "represent their clients in accordance with the law, including applicable rules of professional conduct." *Id.* And rules of professional conduct of course allow the disclosure of

---

[1] The assertions are also wrong. As for Oregon, Oregon Rule of Professional Conduct § 1.6(b)(5) specifically permits a lawyer to "reveal information relating to the representation of a client . . . to comply with other law [or a] court order." And Oregon Revised Statute § 40.225 creates a state-law privilege that does not apply in this federal-question case in federal court. As for Louisiana, Louisiana Rule of Professional Conduct § 1.6(b)(6) allows disclosure of "information relating to the representation of a client . . . to comply with other law or a court order." And as for Florida, "[t]he rule of client-lawyer confidentiality applies in situations *other than those where evidence is sought from the lawyer through compulsion of law.*" R. Regul. Fl. Bar 4-16, Comment (Dec. 2, 2022) (emphasis added).

non-privileged client-related information in discovery. *See* MODEL RULES OF PROF'L CONDUCT R. 1.6, cmt. 3; *McGovern v. Moore*, No. 5:13-CO-1353, 2013 WL 5781315 (W.D. La. Oct. 25, 2013) (where the attorney-client privilege does not apply, lawyer-client confidentiality cannot be used to suppress evidence).

## II.   LAW LAB FAILED TO SHOW THAT A SINGLE MODEST, FIVE-REQUEST DOCUMENT-ONLY SUBPOENA UNDULY BURDENS IT.

Law Lab also failed to show that the subpoena's document requests unduly burden it. Rule 45(d)(3)(A)(iv) requires the Court to quash or modify a subpoena that "subjects a person to undue burden." To decide if the subpoena unduly burdens Law Lab, the Court considers (1) the relevance of the information the State has requested; (2) the breadth of the State's document requests; (3) the State's need for the documents; and (4) the expense and inconvenience on Law Lab. *See In re Subpoena Issued to OneSource Orthopedics, Inc.*, No. 110CV01782JECGGB, 2010 WL 11508011, at *2 (N.D. Ga. Aug. 3, 2010). Law Lab has not shown that any factor favors it. And its arguments should be rejected for the independent reason that Law Lab did not even try to confer as to the scope or perceived burden of any request.

### A.   The Requests are Relevant to Standing.

Each request is relevant to standing. "The term 'relevant' is broadly construed to encompass any matter that bears on or reasonably could lead to other matters that bear upon any issue in the case." *Lowery v. AmGuard Ins.*

*Co.*, No. 1:20-CV-05148-TWT, 2022 WL 4596690, at *1 (N.D. Ga. May 2, 2022).

 ***Request 1.*** The first request seeks the identities of known asylum applicants in Louisiana and Florida. It is relevant to standing. Large scale statistics indicate that the asylum grant rate under the Asylum IFR is greater than the grant rate under pre-IFR practices; and that the stated purpose of the Asylum IFR is to speed asylum determinations, which in turn will directly increase the number of aliens eligible for benefits program; and the federal defendants have conceded that migrant flows are responsive to border policy, *i.e.*, weaker border controls and easier asylum policies act as a so-called immigration magnet. *See Circumvention of Lawful Pathways*, 88 Fed. Reg 11,704 (Feb. 23, 2023); Ex H. to St. John Decl. at 171–72 (Transcript of the Deposition of United States Border Patrol Chief Raul Ortiz) ("There is an assumption if migrant populations are told that there's a potential that they may be released, that yes, you can see an increase."). If the Asylum IFR predictably increases the number of asylum applicants and the number of asylees in Louisiana or Florida, it will presumably cause the relevant State to incur added social-services costs, which would in turn give the State standing. Establishing that asylum applicants and asylees do, in fact, impose social-services costs is relevant to standing, particularly in view of federal defendants' admission about policies acting as immigration magnets. And it bears repeating that Louisiana seeks this information only because (1) the federal

19

defendants have refused to provide it, citing confidentiality regulations applicable to them (but not to third parties like Law Lab); and (2) the federal defendants asked for and obtained pre-answer jurisdictional discovery.

**Request 2.** The second request seeks documents Law Lab has used, presented, or distributed at its workshops. It is relevant to the States' standing under the theory the Supreme Court embraced in *Department of Commerce v. New York,* 139 S. Ct. 2551, 2565–66 (2017). If the requested documents inform workshop attendees that the Asylum IFR makes asylum easier, that state benefits are available to them, and/or instruct the attendees how to go about obtaining those benefits, then the recipients "will likely react in predictable ways," i.e., by applying for public benefits in the State where they settle. *Id.* at 2566. And if an applicant or asylee who settles in Louisiana or Florida obtains public benefits from Louisiana or Florida, then that State has standing.

**Requests 3 & 4.** The third request seeks documents that Law Lab has created across certain programs and projects related to asylum applications. And the fourth request seeks non-client-specific documents Law Lab has provided to asylum applicants about public benefits. Like request 2, these requests are relevant to the States' standing under *Department of Commerce v. New York*—i.e., once an asylum applicant learns that public benefits are available to them, the asylum applicant will likely apply for those benefits in

the State in which the applicant settles. And such documents are themselves indirect evidence that asylum applicants seek public benefits.

*Request 5*. The fifth request seeks documents relating to the impact of the Asylum IFR on asylum applications and asylum grant rates. Again, this request goes to the States' standing. If the Asylum IFR results in an increase in asylum applications or in asylum grant rates, then the State will be able to establish, as a statistical matter, that at least one additional asylum applicant (i) settled in Florida or Louisiana and (ii) obtained public benefits which he or she otherwise would not have, which would in turn give the State standing. Law Lab holds itself out as an expert in these matters. It focuses on "serv[ing] clients and maintain[ing] programs across the country" in order to "provide high-quality resources to unrepresented asylum seekers," who "do not complete their immigration case in a single jurisdiction" and may "move seamlessly between [Law Lab's] program sites." ECF No. 3-5 at 16–19. One would expect Law Lab to have done some analysis of how the Asylum IFR may affect Law Lab—for example, whether Law Lab will have increased demand for its services. Documents reflecting that non-client-specific analysis are not protected and are directly relevant to the impact of the Asylum IFR.

## B.    The Requests Are Tailored to the States' Standing.

Louisiana's requests are targeted to obtain information tied to the States' theories of standing in accordance with the jurisdictional discovery that

the district court ordered and that the federal defendants sought and obtained over the States' objection. Law Lab does not appear to argue otherwise, and it is now too late for it to do so anyway. What's more, if Law Lab took issue with the scope of any request, Louisiana's lead counsel stood willing and able to discuss a potential narrowing—as he did with all of the other subpoena recipients. St. John Decl. at ¶¶ 7–9. Law Lab is the only recipient that did not even try to confer about any request; it went straight to court. *See id.*

## C.   The Requested Documents are Important.

The requested documents are important because the information mined from them will establish the Article III standing of the States of Louisiana and Florida as a matter of law. And that same information will defeat the government's standing objection—which, again, is the reason Louisiana was forced to seek this non-party jurisdictional discovery in the first place. The information thus goes to the ability of 19 States to have the merits of their claims considered by a federal court. *Cf. Massachusetts v. EPA*, 549 U.S. 497, 520 (2007) (recognizing that "States are not normal litigants for the purposes of invoking federal jurisdiction"; they are "entitled to special solicitude").

Law Lab's only rejoinder is that the States should be able to get much of this information from the federal defendants. ECF No. 1-1 at 20. Alas, Louisiana agrees that it *should* be able to obtain some information about specific asylum applicants settling in Louisiana or Florida from the federal

defendants; however, the federal defendants have repeatedly refused to provide that information, citing confidentiality regulations that do not apply to third parties like Law Lab. St. John Decl. at ¶ 4. So Louisiana had no choice.

**D.    Compliance Will Not Be Unduly Burdensome.**

Finally, Law Lab has failed to show that complying with a single five-request, document-only subpoena—whose requests Law Lab did not even bother trying to confer about—will cause Law Lab undue expense and inconvenience. *See, e.g.*, *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1-15-CV-134 RP, 2016 WL 270486, at *2 (W.D. Tex. Jan. 21, 2016) (assertion of undue burden was "less than wholly compelling" because the recipient "did not confer" with the opposing party before moving to quash or "make any effort to narrow the scope of [the] subpoena"); St. John Decl. at ¶ 7.

If Law Lab took issue with the burden it believed any request imposed on it, Louisiana's lead counsel was willing to discuss a solution. *Id.* at ¶ 8. Indeed, Louisiana's lead counsel repeatedly expressed a willingness to work with Law Lab to minimize any burden, as well as a desire "to avoid troubling a federal court with procedural disputes that can be resolved informally." Ex. G to St. John Decl. at 2. That desire, unfortunately, was not mutual.

That aside, Law Lab has not shown that compliance with one five-request, document-only subpoena will cause it *undue* burden or expense. A request is not unduly burdensome simply "because the documents themselves

23

are voluminous and cumbersome and significant difficulty and expense will be involved in producing them." 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.). And it is unclear why Law Lab believes that it needs to screen some of the responsive documents: If Law Lab maintains a client and conflicts database—as ethics rules require —it can simply query that database for individuals tied to Florida or Louisiana, and produce the non-privileged identity-related fields.

### III. THE COURT SHOULD MODIFY THE SCOPE OF THE SUBPOENA IF THE COURT FINDS THE SUBPOENA OBJECTIONABLE IN ANY RESPECT.

"Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004). So courts routinely modify subpoenas to "exclude documents covered by privilege or work product," for example. *La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, No. CV 22-2398, 2023 WL 156876, at *8 (E.D. La. Jan. 11, 2023). If the Court concludes that any aspect of any request is objectionable in any respect, the Court should modify the request accordingly.

### CONCLUSION

The Court should deny the motion to quash. Law Lab's claims of privilege and work-product protection are factually inadequate, legally inadequate, and waived. The Court should reject them here and now. If the Court is inclined to further entertain them, however, the Court should require Law Lab to produce a log sufficient to allow Louisiana to assess each claim on a document-specific

basis. And if the Court finds any aspect of any request objectionable, the Court should modify the subpoena to remove only that aspect of that request.

Dated: March 30, 2023

Respectfully submitted,

/s/ Jordan Bailey Redmon

STEPHEN J. PETRANY
  *Solicitor General*
Georgia Bar No. 718981
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
Tel: (404) 458-3408
Fax: (404) 651-6920
spetrany@law.ga.gov
*Local Counsel*

JORDAN BAILEY REDMON*
  *Assistant Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
Fax:  (504) 556-9900
redmonj@ag.Louisiana.gov
*Counsel for the State of Louisiana*
*\*Admitted Pro Hac Vice*

## LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(D), I certify that this document has been prepared in Century Schoolbook 13-point font—"one of the font and point selections approved by the Court" in Local Rule 5.1(C).

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON

## CERTIFICATE OF SERVICE

I certify that on March 30, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of the filing to all counsel of record.

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON